# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, STEPHEN A. KRAHLING and JOAN A. WLOCHOWSKI,<br>    *Plaintiffs,*<br>    v.<br>MERCK & CO., INC.,<br>    *Defendant.* | Civil Action No. 10-4374 (CDJ) |
| IN RE: MERCK MUMPS VACCINE ANTITRUST LITIGATION | Master File No. 12-03555 (CDJ) |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## ORDER REGARDING PRODUCTION
## OF DOCUMENTS AND INFORMATION

   This Order sets forth the protocol for the production of documents, both hard-copy documents and electronically stored information ("ESI"), in the above-captioned actions (the "Actions").

### I.  GENERAL

   1.  This Order will help to streamline Document and ESI discovery to best carry out the requirements set forth in the Federal Rules of Civil Procedure.

   2.  Relators Stephen A. Krahling and Joan A. Wlochowski ("Relators"), Plaintiffs Chatom Primary Care, P.C., Andrew Klein, M.D., John I Sutter, M.D., George E. Nakashima, M.D. and Bellaflor A. Trompeta, M.D. (collectively "Plaintiffs"), and Defendant Merck Sharp & Dohme Corporation, formerly known as Merck & Co., Inc. ("Merck" or "Defendant") (collectively "Parties") shall take all reasonable steps to comply with the protocol set forth herein.

   3.  Except as specifically limited herein, this Order governs the production of discoverable Documents and ESI (defined below) by the Parties during the Actions.  In the event of remand or transfer to other courts, this Order will remain in effect in all respects, until adopted by the remand or transferee court or replaced by a successor Order.

   4.  This Order shall not enlarge or affect the proper scope of discovery in these Actions, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or

admissible in this or in any other litigation. Additionally, this Order does not alter or expand the preservation obligations of the Parties.

5. Subject to the Parties' objections and responses to requests for production of Documents, and subject to the Parties' Protective Order, all Documents or portions of Documents that are identified as responsive to discovery requests not designated as "privileged" and not concerning, regarding or relating to other Merck products not the subject of the Litigation shall be produced in the manner provided herein. Portions of responsive documents that contain confidential or commercially sensitive information and that concern, regard, or relate to other Merck products not the subject of the Actions may be redacted, unless such redaction renders the relevant portion of the document incomprehensible or unintelligible. Any redactions pursuant to the preceding sentence shall be identified as "OMP." If the receiving Party finds a document to be incomprehensible or unintelligible because of a redaction, the Parties will meet and confer to try in good faith to resolve the dispute. If the Parties cannot resolve the dispute, any Party may petition the Court to resolve the dispute. Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by federal rule, the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable and valid.

6. The Parties agree to abide by the terms of this Order in good faith and they agree to promptly alert all other Parties concerning any problems associated with complying with this Order. To the extent compliance with this Order imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue.

7. Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

II. **DEFINITIONS**

1. "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes any written, recorded, or tangible graphic matter, or any other means of preserving thought or expression, including

all non-identical copies, drafts, worksheets, and proofs, whether handwritten, typed, printed, or otherwise created, specifically including telephone slips and logs, diary entries, calendars, reports, evaluations, assessments, analyses, test results, correspondence, memoranda, notes, email, text messages, instant messages (including all messages sent, received and produced by applications like Skype, AIM, or Google Chat), chat logs (including all chat logs sent, received and produced by applications like Skype, AIM, or Google Chat), videotapes, video cartridges, audio tapes, electronically stored information of any kind, drawings, graphics, charts, photographs, computer diskettes and disks, facsimile transmissions, and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.  The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

     2.    "**Electronic Document or Data**" means Documents or Data existing in electronic form including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

     3.    "**Electronically stored information**" or "**ESI**," as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

     4.    "**Hard-Copy Document**" means Documents existing in tangible form, including but not limited to paper Documents.

     5.    "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

     6.    "**Metadata**" means:  (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

     7.    "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

8. **"Optical Character Recognition"** or **"OCR"** means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

9. **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

10. **"Confidentiality Designation"** means the legend affixed to Documents and ESI or provided in the "Confidentiality" metadata field pursuant to Section V, Paragraph 1 below for Confidential Discovery Information as defined by, and subject to, the terms of the Parties' Protective Order in the Actions.

11. **"Searchable Text"** means the native text extracted from an Electronic Document or any Optical Character Recognition text (**"OCR text"**) generated from a Hard-Copy Document or electronic image.

12. **"Load file"** means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving party's document review platform, and the correlation of such data in the platform.

13. **"Unitization"** means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

### III.   DATA SOURCES AND CULLING CRITERIA

1. **Custodians**. The Parties will agree upon the list of custodians, which will be subject to the producing party's ongoing good faith efforts to identify the custodians most likely to have responsive or relevant information. In certain circumstances, pursuant to an agreement between the Parties, reasonably accessible Documents may include documents from other MMRII or mumps vaccine litigations, which will be produced in accordance with the terms of this Order to the extent feasible, and which will be produced in addition to, and not at the exclusion of, any documents that

must be produced in the Actions.  If responsive documents are to be produced from another MMRII or mumps vaccine litigation, the parties shall meet and confer to determine how they will be produced and Merck agrees to make reasonable and good faith efforts to identify the documents produced from other MMRII or mumps vaccine litigations in accordance with the preceding sentence.

Pursuant to the Court's instructions and the agreements reached at the January 22, 2015 conference, Merck shall collect and search the entirety of the email accounts of up to 20 custodians who are current employees of Merck, whom Relators and Plaintiffs shall identify.  For the Documents and ESI other than email for such custodians, Merck shall conduct an attorney-guided collection interview with the custodian and perform a targeted collection.  To the extent Relators or Plaintiffs seek this collection and search approach for more than 20 custodians who are current employees of Merck, the parties shall meet and confer to discuss the collection and search methodology.  For all other current custodians, Merck shall conduct an attorney-guided collection interview with the custodian and perform a targeted collection of the custodian's Documents and ESI.  All collections shall be limited to the time period for which the custodian had responsibility for or involvement with the mumps vaccine.

For targeted collections conducted pursuant to the foregoing protocol, Documents and ESI may be collected from the agreed-upon custodians' hard drives, home drive any custodian specific shared drives, cloud storage locations, email accounts (including any personal email accounts if such accounts contain responsive or relevant Documents or ESI), removable or portable Media (including thumb or flash drives, external hard drives, CDs or DVDs), Hard-Copy Documents, and any other source to the extent that the source may contain potentially responsive or relevant information as identified by the custodian(s).  The parties agree that for those custodians who are former employees of a producing party, the producing party will search for and collect, if available, the former employee's hard drive, home drive, email PST and Documentum that the former employee used at the time of departure from the producing party.  Subject to the Parties' objections and responses to requests for production of Documents and ESI, and subject to the Parties' Protective Order, the Parties shall begin producing responsive, non-privileged Documents and ESI, on a rolling basis, from the files of the identified custodians.

      2.    **Non-Custodial Sources**. The Parties will agree upon the list of non-custodial sources, such as department files, shared drives, databases, or document management systems (such as eRooms, SharePoint, or Documentum), that will be searched to identify potentially responsive or relevant Documents or ESI.  Subject to the Parties' objections and responses to requests for production of

Documents and ESI, and subject to the Parties' Protective Order, the Parties shall begin producing responsive, non-privileged Documents and ESI, on a rolling basis, from the identified non-custodial sources.

3. **Foreign Documents**.  The producing party shall produce responsive, non-privileged documents irrespective of whether the documents are located in or outside of the United States.

4. **Search Queries and Methodologies**.  The Parties agree that they will cooperate in good faith regarding the formulation of appropriate search queries and methods to be used to cull potentially responsive or relevant ESI.  The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate.  If during the search query negotiation process the producing party objects to a proposed search query on the basis of over-breadth or undue burden, the requesting party may request and the producing party shall provide the requesting party with a hit rate report.  Merck will use good faith efforts to provide a search term hit report that contains unique hit counts, if able. If a producing party is aware, or reasonably should be aware, that any potentially responsive or relevant Documents or ESI contain a language other than English, the Parties shall meet and confer to discuss how such documents shall be searched and reviewed for production.  The Parties may agree to modify the search queries or the search methodologies during the course of the search query negotiation process if the search queries or the results of search methodologies appear under-inclusive or over-inclusive.   After the Parties agree upon the final list of search queries, no search queries will be added to the list absent written agreement by the Parties or, if the Parties reach an impasse after meeting and conferring in good faith, by Court order.  The Parties agree to review all potentially responsive Hard Copy Documents and not apply search queries as a method to cull Hard Copy Documents.  This Order does not address or resolve any other objection to the scope of the Parties' respective discovery requests.

5. **Targeted Follow-up Requests for Documents or ESI**.  Nothing in this Order shall preclude a party from subsequently requesting narrowly tailored, targeted follow-up requests for Documents or ESI if specific facts demonstrate a particular need or justification for such Documents or ESI, and if the documents can be produced without undue burden (e.g., on a "go get" basis).

6. **System Files**.  The Parties may exclude certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

7. **Global De-Duplication**.  A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians.  For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only e-mail messages in which the parent document and all attachments are exactly the same will be considered duplicates.  However, Metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced in the "CUSTODIAN" field in the production Load File.  To accommodate rolling productions, for ESI that is removed as duplicate ESI from earlier production, the producing party shall provide the receiving party with an overlay file no later than seven (7) days after the date of each rolling production for the CUSTODIAN field, which will include the duplicate custodians' names.  The Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.  In addition, if the emails were collected directly from MS Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files.

IV. **Preservation**

1. The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

2. The Parties agree that the circumstances of this case, which include allegations of incidents occurring over 15 years ago, may warrant the preservation, collection, review, or production of Documents or ESI from a variety of older sources.  However, some sources may be deemed not reasonably accessible, and therefore need not be collected.  The Parties agree that the following Documents or ESI is not reasonably accessible:

    a) Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

    b) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c) On-line access data such as temporary Internet files, history, cache, cookies, and the like.

    d) Data stored on photocopiers, scanners and fax machines.

  e)  Data in metadata fields that are frequently updated automatically, such as last-opened dates, except that metadata shall be produced in accordance with Section V, Paragraph 1.

  f)  Data maintained or duplicated from or in any electronic system used for the purpose of system recovery or information restoration and/or retention, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows. The Parties recognize, however, that the allegations of the incidents occurred over 15 years ago. Neither Party is obligated to preserve or collect from system-recovery or information restoration tapes as outlined above. Nonetheless, if a custodian identifies a legacy system, database or other historical data repository which may contain unique data, the Parties will meet and confer to determine whether the source needs to be preserved and/or collected.

  g)  Server logs, system logs, or network logs.

  h)  Voicemail messages.

  i)  Data remaining from systems no longer in use that is unintelligible on any system.

  j)  Logs of calls made from cellular or land-line phones.

  3. However, nothing herein shall prevent a Party from subsequently requesting that ESI or other Documents identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval. Nothing in this Order shall eliminate or alter any party's obligation to retain Native Format copies, including associated metadata, of all ESI preserved for and produced in the Actions and/or original versions of all Hard-Copy Documents preserved for and produced in the Actions.

### V. FORMAT OF PRODUCTION

  1. **Non-Redacted Electronically Stored Information Not Produced in Native Form**. Non-redacted ESI should be produced in a form no less "searchable" than it is maintained in the normal course of the producing party's business. ESI will be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (OPT or DII files) (depending on the preference of the requesting party). Conversion of Word documents: When Word documents are converted to TIFFs, the version that will be converted is as it was last saved and with track changes turned on. This means the images and extracted text will reflect the track changes. In all events, conversion of Microsoft Office document types to TIFF shall reflect

comments, speaker notes, footers, headers and track changes. Non-redacted ESI shall be produced with searchable extracted text of the entire Document (at the document level in a .TXT file) and the following Metadata fields in a Concordance .DAT file, where applicable:

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| BEGBATES | ABC000001 | Beginning production number or Bates number for a given file/document | E-mail and E-Doc |
| ENDBATES | ABC000002 | Ending production number or Bates number for a given file/document | E-mail and E-Doc |
| BEGATTACH | ABC000001 | Beginning production number or Bates number for the attachment range | E-mail and E-Doc |
| ENDATTACH | ABC000015 | Ending production number or Bates number for the attachment range | E-mail and E-Doc |
| ATTACHRANGE | ABC000001 – ABC000015 | Production number of first page of attachment range through last page of attachment range All Electronic Documents attached to an e-mail will be produced contemporaneously and sequentially immediately after the parent e-mail. | E-mail and E-Doc |
| CUSTODIAN(S) | Smith, John; Brown, Julie | Custodial source(s) of documents, including documents not produced due to de-duplication. | All |
| SUBJECT/Title | Meeting Minutes | Subject line extracted from e-mail message or title from operating system metadata | E-mail and E-Doc |
| DOC TITLE | Meeting Minutes | Document title from application metadata | E-Doc |
| FROM | Smith, John | Sender | E-mail |
| TO | Jones, Tom; Brown, Julie | Recipient | E-mail |
| CC | Cain, John | Copyee | E-mail |
| BCC | Stevens, Lisa | Blind Copyee | E-mail |
| DATESENT/TIMESENT | 02/08/2008 08:59 EST | Sent date and time of an email message in the following format: MM/dd/yyyy HH:mm zzz MM is month mm is minutes zzz is the time zone the data was processed in. | E-mail |
| DATERCVD/ TIMERCVD | 02/08/2008 08:59 EST | Received Date and time an email message was received in the following format: MM/dd/yyyy HH:mm zzz MM is month mm is minutes zzz is the time zone the data was processed in. | E-mail |
| AUTHOR* | Smith, John | Name of person who created document | E-Doc |

9

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| | | *Parties acknowledge that the Author field may not actually be the Author of the document. | |
| FILENAME | October Agenda.doc | Original file name of native document | E-Doc |
| FILE PATH(S) | C:\My Documents\Agenda | Pathway(s) for documents | E-mail and E-Doc |
| TEXT PATH | D:001\RET000005.txt | Relative path to document level text file | E-mail and E-Doc |
| DATECREATED/ TIMECREATED (Operating System) | 02/08/2008 08:59 EST | Date and time document was created in the following format MM/dd/yyyy HH:mm zzz MM is month mm is minutes zzz is the time zone the data was processed in.  This metadata value is extracted from the Windows system created date. | E-Doc |
| DATELASTMODIFIED/ TIMELASTMODIFIED (Operating System) | 02/08/2008 08:59 AM EST | Date and time the document was last modified in the following format MM/dd/yyyy HH:mm zzz MM is month mm is minutes zzz is the time zone the data was processed in. This metadata value is extracted from  Windows system modified date&time | E-Doc |
| DATECREATED/ TIMECREATED (Application) | 02/08/2008 08:59 EST | Date and time document was created in the following format MM/dd/yyyy HH:mm zzz MM is month mm is minutes zzz is the time zone the data was processed in.  This metadata value is extracted from the application created date. | E-Doc |
| DATELASTMODIFIED/ TIMELASTMODIFIED (Application) | 02/08/2008 08:59 AM EST | Date and time the document was last modified in the following format MM/dd/yyyy HH:mm zzz MM is month mm is minutes zzz is the time zone the data was processed in. This metadata value is extracted from the application  modified date&time | E-Doc |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| FILEEXT | Msg | File extension of native document | E-mail and E-Doc |
| FILESIZE | 50kb | Size of the original email or e-doc | E-mail and E-Doc |
| DOCUMENTTYPE | Application/msword | Describes the type of document. (mime type) | E-mail and E-Doc |
| PAGECOUNT | 16 | Number of pages for the document | All |
| HASH | d131dd02c5e6eec5694d0698aff85c2fsch5876217eab40045733b8fb789 | MD5 or SHA1 Hash Value | E-mail and E-Doc |
| NATIVEFILE PATH | D:\001\ABC000005.xls | Path or hyperlink to documents being produced in native file format | Native |
| CONFIDENTIALITY | Confidential | Indicates the confidentiality designation of the produced document pursuant to any applicable Protective Order | All |
| REDACTION | Yes | Indicates whether the document is redacted | All |

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document. The parties acknowledge there can be differences between the Operating System (Windows) and Application date/time fields and also agree that Producing Party has no obligation to try and reconcile the differences, if any.

If documents, such as electronic mail, are produced, the relationship between related documents (e.g., email attachments) should be preserved. All Electronic Documents attached to an email are produced contemporaneously and sequentially immediately after the parent email. Parties may request the production of Documents or ESI in Native form by Bates number in the event that a Document or ESI produced in TIFF form is illegible.

2.  **ESI to be Produced in Native Form**. Non-redacted Microsoft Access or other databases, Microsoft Excel or other spreadsheet files, Microsoft PowerPoint files, or other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course, shall be produced in their Native Format, including the formulae imbedded in the spreadsheet and any Metadata contained in the file. Files produced in Native Format shall be named either with a sequential Bates number followed by the file name or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file name. A placeholder TIFF with the original file name, the language "Document Produced in Native" (or similar language), and stamped with assigned Bates number and confidentiality designation shall be included for each native file produced. To the

11

extent native files, including electronic spreadsheets or presentations, are redacted, production shall be made in TIFF format in accordance with the section on redacted document and not in Native Format.

      3.    **Redacted Documents**. The Parties may redact Documents or ESI on the following bases: attorney-client privilege, attorney work-product privilege, and HIPAA. In addition, portions of responsive documents that contain confidential or commercially sensitive information and that concern, regard, or relate to other Merck products not the subject of the Actions may be redacted, unless such redaction renders the relevant portion of the document incomprehensible or unintelligible. Any redactions pursuant to the preceding sentence shall be identified as "OMP." If the receiving Party finds a document to be incomprehensible or unintelligible because of a redaction, the Parties will meet and confer to try in good faith to resolve the dispute. If the Parties cannot resolve the dispute, any Party may petition the Court to resolve the dispute. For redacted electronic files, and redacted Hard-Copy Documents, the Parties agree to produce ESI and Hard-Copy Documents as redacted single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the requesting party), with Metadata in the dat. file. All Electronic Documents attached to an e-mail are to be produced contemporaneously and sequentially immediately after the parent e-mail. The Metadata fields for a redacted Document or ESI will include BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, and TEXT, which shall contain the OCR or Optical Character Recognition text so as not to reveal redacted text. To the extent Documents or ESI have been de-duplicated, the CUSTODIAN field shall list all custodians that had possession of the Document. No other Metadata fields will be produced for a redacted Document.

      4.    **Hard-Copy Documents**. Hard-Copy Documents should be produced as single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the requesting party) with coded data contained in a separate file. The producing party shall also provide document level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, and TEXT, indicating the beginning and ending Bates numbers, attachments ranges of all documents, the custodian information, and the OCR or Optical Character Recognition text.

      5.    **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments and/or affixed

notes shall be maintained as it existed in the original Document, so that each page will not be split, but instead sequenced and saved together, as they existed in the original.

      6.    **Databases**.  For Documents and ESI from non-custodial sources, the Parties shall cooperate to produce responsive Documents and ESI in a reasonably useable production format.

      7.    **Social Media**. Responsive ESI may include social media websites (e.g., LinkedIn, Facebook, Twitter, etc.).  Social media sites, depending upon the source and type of relevant information, may be produced by capturing information through "screen shots" or "screen captures" and converting same into images along with corresponding extracted text or OCR unless the Parties agree to perform bulk exports of accounts, such as by exporting out a profile from LinkedIn or downloading a copy of an individual's Facebook data or archive.

      8.    **Searchable Text**.  The Parties agree that they will produce Searchable Text for all Electronic Documents and Electronic Data produced.  For all non-redacted ESI, the searchable text will be extracted directly from the native file.  Likewise, the Parties agree that they will produce Searchable Text for all Hard-Copy Documents that have been converted to images.  For any document where text has been redacted, Searchable Text will be provided for the non-redacted text.

      9.    **Bates Numbering**.  Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document.  Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production.  No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

      10.    **Confidentiality**.  Electronic data produced in discovery may be labeled with Confidentiality Designations.  In the case of *.tiff images, confidentiality legends shall be "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document and the designation shall be supplied in the fielded data.  For materials produced in Native Format, the producing party shall supply fielded data identifying the confidential treatment of each document designated for confidentiality and will endorse the tiff placeholder accompanying the native file with the appropriate confidentiality designation, and shall name the file with the Bates number followed by the Confidentiality Designation and the file name.  A failure to make a designation

through fielded data, an endorsing of the tiff image, or a naming of the file may be corrected by notifying the other side of the mistaken designations of confidential materials.

11. **No Color**. Documents and ESI in color need not be produced in color. A party may request by bates-number that a reasonable number of specifically-identified documents be produced in a color .PDF or .JPG format.

12. **Foreign Language Documents**. To the extent that Documents or ESI are produced that contain languages other than English, in whole or in part, the producing party shall produce all foreign language documents and ESI in the original language. The producing party has no obligation to provide a translation of the Document or ESI or any portion thereof.

13. **Production Media**. Documents shall be produced on CDs, DVDs, USB hard drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The Production Media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.

14. **Replacements.** All files that are replaced for any reason must be annotated with an "-R" designation appended to the Bates prefix. A cross reference file will be provided identifying the document's original Bates and its replacement Bates number.

VI. **PRIVILEGE AND WORK PRODUCT CLAIMS**

1. **Privilege Log**. The parties recognize that some Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"), including any legal holds issued during the course of these Actions. For each responsive Document withheld or redacted because of privilege, the producing party's privilege/redaction logs shall include the following information to the extent it is reasonably available:

    a) Custodian or source: states the name of the person(s) who has (have) custody of the Document;

    b) Date of the Document, or if no date appears, the date(s) on which it was prepared, sent, or received;

    c) Author(s);

      d)      For Documents produced, but redacted on the ground of privilege, the starting and end Bates number;

      e)      Recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda);

      f)      Describe generally the nature and subject matter of the Document;

      g)      Specification of the privilege claimed;

      h)      The document type and the basis for the privilege claim.

The Date, Author and Recipient(s), CC(s) and BCC(s) fields can be populated from the top line email as long as the party withholding documents adequately describes the basis of the privilege claim. If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. An email thread for which a Party claims a privilege may be logged in a single entry. A document family for which a Party claims a privilege shall be separately logged. The Parties agree, for each of the above-captioned actions, that a Party need not include on its privilege log for that action, any document or communication that is (i) to or from outside counsel for any Party; (ii) in anticipation of or referencing either of the Actions; and (iii) covered by the attorney-client privilege, attorney work product protection, and/or any other applicable privilege or protection.

      2.      **502(d) Protection**. Pursuant to Federal Rule of Evidence 502(d), neither the attorney-client privilege nor the work product protection is waived by disclosure connected with these Actions. The inadvertent or unintentional production of privileged or work product protected documents, Electronically Stored Information, or other information is not a waiver of the privilege or protection in this case or in any other federal or state proceeding. Nothing in this Order shall be construed to prohibit a producing party from seeking relief from any inadvertent or unintentional disclosure of confidential, privileged, or work-product information. Nothing in this Order shall diminish the legal rights of any person seeking such relief. When a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to

conduct a review of documents, ESI or information (including metadata) for responsiveness, relevance and/or segregation of privileged and/or protected information before production.

**VII.    MISCELLANEOUS**

    1.    **Third Party Documents**.  A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to these Actions have requested that third parties produce documents in accordance with the specifications set forth herein. Within 14 days of receiving any Documents or ESI obtained pursuant to a non-Party subpoena, the Issuing Party shall produce such Documents or ESI to all other Parties, except where the Third Party Documents are to be used in a deposition in which case the Issuing Party shall produce such Documents or ESI to all other Parties no later than three (3) days prior to the deposition. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

    2.    **Good Faith**.  The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Order.  If a producing party cannot comply with any material aspect of this Order, such Party shall inform the requesting party in writing at or before the time of production as to why compliance with the Order was unreasonable or not possible.  No Party may seek relief from the Court concerning compliance with the Order unless it has conferred with other affected Parties to these actions.

    3.    **No Effect on Discovery or Admissibility**.  This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  Nothing in this Order shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

    4.    **Protective Order**.  All documents produced by the Parties will be subject to the terms of the Protective Order entered in these Actions.

    **SO ORDERED**   this  30th   day of    January        , 2015.


                                                /s/ Lynne A. Sitarski
                                               LYNNE A. SITARSKI,   U.S.M.J.