# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: MERCK MUMPS VACCINE ANTITRUST LITIGATION | : <br> : <br> : <br> : Master File No. 12-3555 (CDJ) <br> : <br> : |

## MEMORANDUM

**LYNNE A. SITARSKI**                                                                                   April 6, 2018
**U. S. MAGISTRATE JUDGE**

      This is a consolidated putative antitrust and consumer protection class action. Plaintiffs—direct purchasers of a mumps-containing vaccine from Defendant Merck, Sharpe & Dohme Corporation, formerly known as Merck & Co., Inc. ("Merck")—filed a motion for leave to file a Second Consolidated Amended Class Action Complaint to add a claim for attempted monopolization by Merck. (Pls. Mot., ECF 149; Pls. Reply, ECF 157). Defendant Merck opposed the motion. (Def. Resp., ECF 154). On October 30, 2017, the undersigned issued an Order denying Plaintiffs' request to file a second amended complaint.[1] (Order, ECF 160). Plaintiffs filed objections to the October 30, 2017 Order. (Pl.'s Objections, ECF 163). After further briefing and oral argument by the parties, the Honorable C. Darnell Jones, II remanded the matter for further analysis of: (1) the extent to which the Defendant would be prejudiced if Plaintiffs were given leave to amend; and (2) the extent to which undue delay was the basis for the ultimate decision not to grant Plaintiffs' Motion for Leave to File a Second Amended Consolidated Complaint. (Order, ECF 180).

---

[1] The Honorable C. Darnell Jones, II referred the matter for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 155).

**I.     BACKGROUND**

The facts and procedural posture of this case are well-known to the parties, so the Court provides only a brief recitation pertinent to the motion at issue. On June 25, 2012, Chatom Primary Care P.C., Andrew Klein, M.D., and John I. Sutter, M.D., ("Plaintiffs"), filed a putative class action against Defendant Merck alleging monopolization in violation of the Sherman Act, 15 U.S.C. § 2, and various state consumer protection laws. (Compl., ECF 1). A Consolidated Amended Complaint was filed on September 20, 2012. (Consol. Am. Compl., ECF 26). Defendant filed a motion to dismiss the Amended Complaint on November 19, 2012. (ECF No. 40). After a ruling on Defendant's motion to dismiss, discovery commenced in October 2014. (ECF 63, 68, 69).

The parties engaged in extensive discovery over a protracted period of time. Defendant began rolling productions on October 31, 2014. (Def. Resp. 6, ECF 154). Discovery included, *inter alia,* Merck's production of nearly 144,000 documents, depositions of 24 current and former Merck employees, and third party discovery. (*Id*. at 6-7). After multiple joint requests for extension of the scheduling deadlines, fact discovery closed on June 1, 2017.[2] (ECF 89, 105, 113, 128, 142, 143).

On August 21, 2017, Plaintiffs filed a motion for leave to amend the Consolidated Amended Complaint to add a claim for attempted monopolization in violation of Section 2 of the Sherman Act. Defendant opposed the proposed amendment, arguing that Plaintiff unduly delayed seeking leave to add a new cause of action after the close of fact discovery, thereby

---

[2] Pursuant to the original November 13, 2014, Scheduling Order, fact discovery was to be completed by September 29, 2015. (Order, ECF 70). The parties requested, and the Court granted, further amendment of the Scheduling Order that allowed specific, limited fact discovery beyond the June 1, 2017, fact discovery deadline, (ECF 151), and an extension of deadlines for expert discovery, dispositive motions, and motion for class certification. (ECF 172, 178).

prejudicing Merck's ability to defend against the new claim.[3] On October 30, 2017, this Court agreed with Defendant, and denied Plaintiffs' motion. The Court's decision focused on the Plaintiff's undue delay in seeking leave to amend, which would prejudice Merck if a new claim was added after fact discovery closed. Plaintiffs filed objections to the October 30, 2017, Order. On March 13, 2018, Judge Jones issued an Order remanding the matter to me for an in-depth analysis of the extent to which Defendant would be prejudiced by amendment, and the extent to which undue delay was the basis for the Court's "ultimate decision not to grant" Plaintiffs' motion. (Order, ECF 180).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) states that, after an answer has been filed, "a party may amend its pleading only with . . . the court's leave." Fed. R. Civ. P. 15(a). While leave to amend should be freely granted "when justice so requires," the freedom to amend a complaint is not "limitless." *Veneziale v. Quest Diagnostics*, No. 11-cv-4879, 2013 WL 4551178, at *5 (E.D. Pa. Aug. 28, 2013). Leave to amend under Rule 15 may be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision to grant or deny a motion for leave to amend is within the sound discretion of the district court. *Id.* at 272.

---

[3] Defendant also argued that amendment would be futile because Plaintiffs failed to include well-plead factual allegations to establish the requisite specific intent to monopolize. The October 30, 2017 Order did not address the Defendant's futility argument.

## III. DISCUSSION

Pursuant to Judge Jones' March 13, 2018, Order, I will address the extent to which Defendant would be prejudiced if Plaintiffs were given leave to amend, and the extent to which undue delay was the basis for this Court's decision to deny Plaintiffs' request for leave to file a Second Amended Consolidated Complaint. Undue delay and prejudice to the Defendant will be discussed independently and in combination, as both factors formed the basis for the Court's October 30, 2017, decision.

### A. Undue Delay

Plaintiffs waited five years after initiating this litigation -- and nearly three months after the close of fact discovery -- to seek leave to add a new claim against Defendant. This Court recognizes that "delay alone is an insufficient ground to deny leave to amend." *Cureton*, 252 F.3d at 273. However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). This is the case here.

With regard to "undue delay" in seeking leave to amend, the Third Circuit has advised courts to consider "whether new information came to light or was available earlier to the moving party." *Cureton*, 252 F.3d at 273. The "question of undue delay requires that [a court] focus on the movant's reasons for not amending sooner." *Id.* Moreover, the time between when a party discovers information giving rise to a proposed amendment and the filing of their motion is an "important factor" when determining whether there is undue delay. *Gratz College v. Synergis Education Inc.*, No. 14-6966, 2015 WL 9474654, at *2 (E.D. Pa. Dec. 29, 2015); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) *cert. denied*, 499 U.S. 920 (1991)

(plaintiff's delay of four and one half months after receiving certain information was an important factor in finding that the delay was undue).

In this case, Plaintiffs claim that the timing of their amendment is "justified" because new evidence to support their attempted monopolization claim was "uncovered" during discovery. (Pls.' Mot. 8-9, ECF 149). Plaintiffs do not specifically state when they "uncovered" the information giving rise to the proposed Second Amended Complaint, nor do they explain why the requested amendment could not have been made before the close of fact discovery. Instead, Plaintiffs point to four documents produced to them as part of Defendant's sixth, eleventh, and seventeenth document productions. (Exs. C, D, E, F Pls.' Mot., ECF 149; Def. Resp. 4, ECF 154). These documents were produced by Defendant in June, August and November of 2015, Plaintiffs waited until August of 2017 before seeking leave to amend, essentially two years after receiving the materials that gave rise to their proposed new claim. (*Id.*).

Plaintiffs' two year delay between the receipt of materials that alerted them to a potential new cause of action, and actually seeking leave to add the new cause of action, is far in excess of what courts have determined constitutes "undue delay." *See Berger*, 911 F.2d at 924 (affirming district court's decision to deny leave to amend where basis for amendment was known for over four months before leave was sought*); Zeigenfuse v. Kemp & Associates, Inc.*, No. 14-5954, 2015 WL 7568259, at *3-4 (E.D. Pa. Nov. 25, 2015) (finding undue delay where movants were aware of potential claims at least three months before filing motion to amend); *McCarthy v. Komori America Corp.*, 200 F.R.D. 507, 508 (E.D. Pa. 2001) (cataloging cases that denied motion to amend where party offered no explanation for months-long delay in seeking leave).[4]

---

[4] Plaintiffs argue that the cases cited by Defendant in support of this proposition are distinguishable based on the procedural posture of this case (i.e.) dispositive motions not yet filed, no trial date set. The Court considered the history of this case in deciding that undue delay

In their attempt to explain the delay, Plaintiffs claim that "the importance of individual documents" only became apparent after a "holistic analysis" of the evidence uncovered "during discovery." (Pls.' Reply 3, ECF 157). This explanation strains credibility as it seems unlikely that a "holistic" review of four documents would reasonably take two years. *See e.g.*, *Gratz College,* 2015 WL 9474654, at *2 (noting that "opaque references to 'learning through discovery' and citing 'the facts as revealed during the discovery process'" were insufficient to justify delay in seeking leave to file amendment).

Addressing the "undue delay" factor, Plaintiffs argue that the critical question is whether a party mismanaged prior amendments, not whether too much time passed between uncovering new evidence and filing an amendment based on that new evidence. (Pls.' Mot. 4, ECF 157). While Plaintiffs are correct that one way to measure undue delay is whether a movant has had previous opportunities to amend a complaint, s*ee Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993), delay can also be undue when a party has delayed moving to amend, despite having known the factual basis for a new claim for many months. *See Cureton*, 252 F.3d at 274-75 (waiting over two years before filing for leave to amend amounts to undue delay). That is exactly what happened here. Plaintiffs do not dispute that the documents which form the basis of their motion for leave to amend were in their possession in 2015, and that the motion for leave to amend was not filed until August of 2017, two years later. Similar delays have been found unduly long, and motions for leave to amend have been denied on that basis. *See, e.g., Hildebrand v. Dentsply Intern., Inc.*, 264 F.R.D. 192, 199 (E.D. Pa. 2010) (failing to seek an amendment until eight months after the Court-imposed deadline had passed—despite long-term

---

existed. While it is true that the deadline for dispositive motions has not passed, this case has been extensively litigated. To change course at this juncture would create further delay in a case that has been pending for several years and has involved voluminous, involved discovery.

6

knowledge of the information supposedly requiring amendment—constitutes undue delay); *Phoenix Techs., Inc. v. TRW, Inc.*, 154 F.R.D. 122, 123 (E.D. Pa. 1994) (denying motion to amend where defendant offered no explanation for seventeen month delay); *Tarkett Inc. v. Congoleum Corp.*, 144 F.R.D. 289, 291 (E.D. Pa. 1992) (same, where defendant offered no explanation for nearly three month delay); *see also McKnight v. School Dist. of Philadelphia*, No. 00–573, 2001 WL 74772 (E.D. Pa. Jan. 29, 2001) (same, where plaintiff offered no explanation for three month delay, discovery had closed and all parties already deposed).

Based on the unreasonably long time between "uncovering" the documents that form the factual basis of the attempted monopolization claim and seeking leave to file a second amended complaint, this Court finds that Plaintiffs have acted with undue delay in attempting to assert a new theory of recovery after the close of discovery.

### B. Prejudice

While delay played a factor in the Court's decision to deny Plaintiffs' motion for leave to amend, delay was certainly not the sole basis for the Court's October 27, 2017, ruling. This Court also considered other factors outlined by the Third Circuit in deciding whether to grant leave to amend, including whether any undue delay would cause prejudice to the Defendant. (Order, ECF 160). In so doing, this Court weighed the Plaintiffs' purported reason for their delay (using a "holistic approach" to reviewing discovery) against the harm likely to be suffered by the Defendant (inability to conduct discovery related to a new claim), and concluded that Defendant would face significant prejudice if Plaintiffs were allowed to add a new theory of liability after the close of fact discovery.

"[P]rejudice to the non-moving party is the touchstone for denial of an amendment." *Luciani v. City of Philadelphia*, 643 Fed. Appx. 109, 111 (3d Cir. 2016) (citations omitted).

7

Prejudice means "undue difficulty in [defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." *MRO Corporation v. Humana, Inc.*, No. 16-2881, 2017 WL 3675387, at *3 (E.D. Pa. Aug. 23, 2017) (citations omitted). In determining whether prejudice exists, one consideration is whether the proposed amendment "would result in additional discovery, cost, and preparation to defend against new facts or theories." *Cureton*, 252 F.3d at 273. Additionally, courts have found prejudice where the motion for leave was filed months after the factual basis of the amendment was discovered by the moving party. *Cummings*, 2004 WL 906259, *4. Here, Defendant faces that very scenario. Plaintiffs filed their motion for leave to amend on August 21, 2017. Fact discovery closed on June 1, 2017.[5] Plaintiffs waited nearly three months after the close of fact discovery to file for leave to amend, depriving the Defendant of the opportunity to probe the factual basis for Plaintiff's attempted monopolization claim. At this juncture, Defendant is precluded from serving written discovery, conducting depositions or issuing third party subpoenas. I find that this inability to conduct discovery on a new claim substantially prejudices the Defendant. *See Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company,* No. 12-3824, 2013 WL 12149708, at *3 (E.D. Pa. July 23, 2013)*; Weitz v. Burton Photo Industries, Inc.*, No. 95-4280, 1997 WL 363893, at *1 (E.D. Pa. June 16,1997).

Plaintiffs contend that Defendant is not prejudiced because "[e]vidence of Merck's intent," a necessary element to establish attempted monopolization, "is in its own hands." (Pls.' Reply 6, ECF 157). This argument is not persuasive. Section 2 of the Sherman Act "makes it

---

[5] Fact discovery was originally to be completed more than two and one-half years ago, on September 29, 2015. (Order, ECF 68, 70). Since then, the parties requested multiple extensions of the fact discovery deadline, which were all granted by the Court. (Joint Stipulations and Orders, ECF 89, 105, 113, 128). Additionally, there have been several discovery disputes which involved extensive briefing and court intervention. (ECF 78, 98, 114, 130).

8

unlawful to monopolize, attempt to monopolize, or conspire to monopolize, interstate or international commerce." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007) (citing 15 U.S.C. § 2). The Third Circuit has explained the difference between actual monopolization and attempted monopolization as follows:

> To support a claim for *actual* monopolization, a party must prove: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. By contrast, to succeed on a claim of *attempted* monopolization under § 2, a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.

*Mylan Pharmaceuticals Inc. v. Warner Chilcott Public Limited Company*, 838 F.3d 421, 433 (3d Cir. 2016) (citations omitted) (emphasis added); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456. Defendant concedes that some operative facts may be common to the two claims, but correctly points out that the theory behind, and requirements for, an attempted monopolization claim differ from actual monopolization claim. (Def. Resp. 8, ECF No. 154). For example, in addition to the element of intent, Plaintiffs must establish a dangerous probability of monopolization in order to prove an attempted monopolization claim. This requires consideration of the relevant market and the defendant's ability to lessen or destroy competition in that market. *Id.* This analysis may involve different facts and theories than those discovered by Defendant thus far. Because "changing the legal and factual basis of a claim can create undue prejudice," *Luciani*, 643 Fed. Appx. at 111, Defendant should not be denied the fair opportunity to engage in discovery it believes necessary to defend against Plaintiffs' new, alternative theory of recovery.

To cure any prejudice to Defendant, Plaintiffs "agree" to allow Defendant to engage in "relevant and reasonable discovery" beyond the discovery deadline. (Pls.' Reply 7, ECF 157). This suggested solution does not cure the problem created by Plaintiffs' delayed effort to add a new claim. The Court has already granted four requests to extend the deadline for fact discovery. The original deadline, as suggested by the parties in their joint Rule 26(f) report, called for fact discovery to close in September of 2015. Even assuming the time for fact discovery was again extended – prolonging an already protracted and heavily litigated matter – Defendant would incur additional costs associated with the written discovery and depositions associated with its defense of the new claim.[6] It seems likely that some persons who were already deposed would have to be re-deposed, in order to defend against this new claim. Moreover, it seems likely that Merck would need to re-examine at least some of the hundreds of thousands of pages of documents produced in this case[7], to discern the relevance of such documents to defend against the attempted monopolization claim. Certainly, Merck will incur substantial additional costs if it is required to revisit even a portion of the voluminous discovery conducted in this case. *See MRO Corporation*, 2017 WL 3675387, at *4 (prejudice established where proposed amendments would force Defendant to expend additional resources and prolong dispute).

## IV. CONCLUSION

As discussed above, this Court issued its October 30, 2017 Order denying Plaintiffs'

---

[6] As noted above, this case has not been without its discovery disputes with at least four rounds of briefing related to the parties' motions to compel.

[7] Merck contends, and Plaintiffs do not dispute, that Merck has made 72 productions since 2014 "consisting of 143,978 documents or 2,137,352 pages from 51 custodians and 34 noncustodians." (Def. Resp. 2, ECF 154).

10

motion for leave to file a Second Amended Consolidated Complaint for the reasons set forth in greater detail in this Memorandum. Given Plaintiffs undue delay in seeking leave to amend coupled with the maturity of this case, the extensive discovery that has already taken place, and the fact that fact discovery is closed, Defendant would be significantly prejudiced if Plaintiffs were permitted to file a second amended complaint at this juncture.

                              BY THE COURT:

                              /s/ Lynne A. Sitarski
                              LYNNE A. SITARSKI
                              UNITED STATES MAGISTRATE JUDGE